OPINION
{¶ 1} Defendant-Appellant, James N. Dossett, appeals a judgment of the Montgomery County Common Pleas Court finding him guilty of aggravated murder, aggravated robbery, aggravated burglary and firearm specifications, and sentencing him to thirty-nine years to life in prison. Dossett asserts that the trial court erred in denying his motion for a continuance of the trial date, and by admitting a photograph that he claims is prejudicial. He also contends that he was denied a fair trial because of prosecutorial misconduct in the closing argument and because of ineffective assistance of counsel in failing to object to the prosecutor's argument. Finally, Dossett argues that his conviction is contrary to the manifest weight of the evidence. Because the trial court did not abuse its discretion in denying the continuance nor in the admission of the photographic evidence, and because there was no improper argument by the prosecutor, and because the jury did not lose its way in returning the guilty verdicts, we affirm the judgment of the trial court.
 {¶ 2} In the evening of May 9-10, 2003, Dossett, David Vaughn, Gordy Sage and Joe Taylor formulated a plan to break into the home of Vernon Brown, in Clay Township, Montgomery County, Ohio, steal the contents of his safe and then kill Brown. When the men arrived at Brown's home, in the early morning hours of May 10, 2003, Brown was asleep in a chair. Dossett and Vaughn broke into the home by kicking in the locked back door, and Taylor and Sage walked in through the unlocked front door. Immediately upon entering the living room, Dossett shot Brown in the leg with a shotgun, in order to immobilize him, and Taylor demanded the combination to Brown's safe, where the intruders believed there would be a million dollars in cash. Brown was unable or refused to give up the combination, so they ransacked the house. Prior to leaving, David Vaughn shot Brown twice in the head, and Joe Taylor then shot Brown four more times. Brown was left for dead and his body was discovered the next morning.
 {¶ 3} On September 1, 2004, Dossett was indicted for aggravated murder, aggravated robbery, aggravated burglary and a firearm specification. The court appointed counsel to defend Dossett. In early October 2004, Dossett retained Attorney David Fierst to represent him, and the court-appointed counsel was dismissed. A trial was set to commence on February 22, 2005.
 {¶ 4} On February 11, 2005, after significant pre-trial motion practice, Dossett filed a pro-se motion to terminate Mr. Fierst's representation and appoint a new public defender. Attorney Fierst represented to the court that he was prepared to go to trial on February 22, and that the problem between he and Dossett was a difference on trial strategy. On February 14, 2005, the trial court denied the motion but did appoint a private investigator to assist the defense in locating witnesses that Dossett wanted called to testify. Dossett's family subsequently retained attorney Frank Malocu to assist in the defense, and Dossett again asked the court to continue the trial to allow this attorney time to prepare for trial. The court considered this request on February 18, 2005, but denied this motion on the basis that the next available trial date was six months later. Attorney Malocu made an additional motion for a continuance on the morning of trial, which was also overruled.
 {¶ 5} The trial commenced February 22, 2005, with both Mr. Fierst and Mr. Malocu representing Dossett. After the close of the evidence, the jury returned a verdict of guilty on all counts. Thereafter, the trial court sentenced Dossett to eight years for the aggravated robbery, eight years for the aggravated burglary, three years for the firearm specification and life without parole eligibility until after twenty full years, with all sentences to be served consecutively. Dossett's total sentence was, therefore, thirty-nine years to life in prison. From this judgment, Appellant filed this appeal asserting five assignments of error for our consideration.
 First Assignment of Error {¶ 6} The trial court committed prejudicial error by denyinghim a continuance so that he was denied his right to a properlyprepared and effective counsel.
 {¶ 7} Dossett claims that the trial court abused it discretion in refusing to grant him a continuance so that his new attorney could properly be prepared and effective at trial.
 {¶ 8} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." State v. Unger
(1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 9} Whether the trial court abused its discretion by denying a requested continuance depends upon the reasons offered for the requested continuance. State v. Powell (1990),49 Ohio St.3d 255, 259. The potential prejudice to the defendant must be weighed against "a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." Unger, 67 Ohio St.2d at 67. Relevant factors include the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request. Id. at 67-68.
 {¶ 10} In our view, the trial court did not abuse its discretion in denying Dossett's request for a continuance. The trial date had been set for several months, yet Dossett did not obtain new counsel until four days before trial, with a three-day holiday weekend in that interval. By that time, both the prosecutor and existing retained defense counsel had prepared for trial and had subpoenaed witnesses. These efforts, as well as the effort required by the witnesses to appear for trial, would have been wasted if a continuance had been granted. Furthermore, the trial court's comments about its docket and the Prosecutor's representation about his availability indicated that, due to other pressing matters, the court would have been unable to reschedule Dossett's trial for approximately six months. Under these circumstances, the court's refusal to grant a continuance was not arbitrary, unconscionable, or unreasonable.
 {¶ 11} The first assignment of error is overruled.
 Second Assignment of Error {¶ 12} The trial court committed prejudicial error byadmitting a sensational photograph of a non-party brandishing of(sic) a firearm.
 {¶ 13} State's exhibit number 132 was a photograph of Dossett's co-defendant, Joe Taylor with a pistol tucked into his pants.
 {¶ 14} Dossett contends that the admission of this photograph of Taylor, who had his head shaved, and exhibiting a firearm was in violation of Evid. R. 403(A) because it was sensational and it unfairly prejudiced him.
 {¶ 15} Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *." Trial courts, however, have broad discretion in determining the admissibility of evidence at trial, and unless the trial court has abused its discretion and the defendant has been materially prejudiced thereby, an appellate court may not reverse. State v. Hymore (1967), 9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024; State v. Maurer
(1984), 15 Ohio St.3d 239, 266. An abuse of discretion is defined as a judgment that is unreasonable, arbitrary, or unconscionable; something more than a mere error of judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. In this case, Dossett has failed to demonstrate that he was materially prejudiced by the admission of the photograph.
 {¶ 16} The photograph was utilized by the State during its direct examination of David Vaughn, who had previously entered a guilty plea for the same offenses, and had admitted that he was the one who shot Mr. Brown in the head. During his testimony, Vaughn identified the gun in the picture as the weapon that both he and Taylor used to shoot Mr. Brown on May 10, 2003. Vaughn also testified that the photograph, which was taken a week after the murder, was a fair and accurate representation of Mr. Taylor and the weapon. Once identified, the photo was utilized, without objection, for other witnesses to identify both Taylor and the weapon that they saw in the possession of the four co-defendants on the night in question. A review of the transcript reveals that a proper foundation for the admission of the photo was established by the State; furthermore, the evidence was useful to the jury, it showed the murder weapon, which was never recovered by the police, and it showed it in the possession of one of the co-defendants near the time of the incident. The defense portrayed Vaughn as a liar who was so under the influence of drugs and alcohol on the night in question, that he could not accurately relate the events of the crime. The photo was, therefore, useful to corroborate Vaughn's testimony.
 {¶ 17} Dossett argues that the photograph "negatively impacted" the jury; however, the standard set forth in Evid. R. 403(A) is not "negative impact," but instead, it is "unfair prejudice, confusion of the issues, or of misleading the jury." Dossett has failed to establish those elements.
 {¶ 18} For these reasons, the trial court did not abuse its discretion by allowing the admission of the photograph because the evidence was probative and Dossett was not materially prejudiced by its admission.
 {¶ 19} The second assignment of error is overruled.
 Third Assignment of Error {¶ 20} Prosecutorial misconduct in calling appellant "thedevil" and in extensively discussing punishment served to denyappellant due process.
 Fourth Assignment of Error {¶ 21} Appellant was denied effective assistance of counselwhen his attorney failed to object to prosecutor's improperclosing argument.
 {¶ 22} Dossett argues in these two assignments that the prosecutor committed misconduct in closing argument in two regards: (1) in that he called him "the devil;" and (2) that he repeatedly discussed the effect of the penalty for murder with the jury, and that the failure of counsel to object to the discussion of the penalty constituted ineffective assistance of counsel.
 {¶ 23} In closing, the Prosecutor stated, in response to the defense argument that Vaughn was a liar, and that he had gotten a deal: "I don't like the man [Vaughn] for what he did. But at least he assumed responsibility for what he did. And, we didn't give up the devil [Vaughn] to get a sinner [Dossett]. We got the devil, we got the devil, we got the devil. He's going to go to jail under Ohio law for life, a sentence of life." The Prosecutor then went on to briefly argue, without objection, in support of the fact that Vaughn was not "given up" in order to get Dossett, that Vaughn faced life imprisonment, and that he would not be eligible for parole for at least twenty-eight years.
 {¶ 24} Notwithstanding Appellant's failure to preserve the punishment issue for appeal, we find that the State's comments did not constitute prosecutorial misconduct for which we would complete a plain error analysis.
 {¶ 25} In order to find prosecutorial misconduct, we must first determine whether the prosecutor's remarks were improper; if so, we then consider whether the remarks prejudicially affected substantial rights of the accused. State v. Treesh
(2001), 90 Ohio St.3d 460, 464, citing State v. Smith (1984),14 Ohio St.3d 13, 14.
 {¶ 26} Additionally, we note that the State is entitled to a certain degree of latitude during closing arguments and is free to draw reasonable inferences from the evidence and argument presented at trial, which may be commented on during closing argument. Treesh, 90 Ohio St.3d at 466, citing State v. Grant
(1993), 67 Ohio St.3d 465, 482.
 {¶ 27} As a general rule, questions of punishment have no place in the trial of guilt or innocence. See: State v. Brown
(1988), 38 Ohio St.3d 305, 316. However, in this case, the only reference to punishment in the State's closing argument is in regard to the punishment that Vaughn faced on his guilty plea, which was offered to rebut Dossett's argument that Vaughn's testimony was procured by a sweetheart deal. While it might be inferred that Dossett was facing a like punishment, there was no appeal to the jury to disregard the evidence and to convict Dossett solely because "life" did not really mean "life." The prosecutor's argument must be reviewed as a whole. State v.Burgun (1978), 56 Ohio St.2d 354, 366. And, reviewing the State's argument as a whole, we find that the State's comments did not constitute prosecutorial misconduct.
 {¶ 28} Because we have found no prosecutorial misconduct, there can be no claim that Dossett's counsel was ineffective for failing to object to the argument.
 {¶ 29} The third and fourth assignments of error are overruled.
 Fifth Assignment of Error {¶ 30} The trial court's entering the finding of Appellantguilty herein is reversible error as said finding is against themanifest weight of the evidence.
 {¶ 31} In this assignment of error, Dossett suggests that his conviction was contrary to the manifest weight of the evidence, because there was no credible evidence that he was present nor that, if he was present, he was a knowing participant in the offenses.
 {¶ 32} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 33} R.C. § 2911.01(A)(1) provides that "[n]o person, in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control, and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 34} R.C. § 2911.11(A)(2) provides that "[n]o person, by force, stealth, or deception shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured * * * portion of the structure any criminal offense, if * * * [t]he offender has a deadly weapon * * * on or about the offender's person or under the offender's control."
 {¶ 35} R.C. § 2903.01(B) provides that "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit or while fleeing immediately after committing or attempting to commit * * * aggravated robbery, * * * aggravated burglary, * * *."
 {¶ 36} R.C. §§ 2945.14 and 2945.145 provide that the trial court shall impose an additional sentence of three years upon a defendant found guilty of a specification that charges "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and * * * used it to facilitate the offense."
 {¶ 37} In this case, the State provided uncontroverted testimony, through David Vaughn, that Dossett, Vaughn, Taylor and Sage formulated a plan on the evening of May 9, 2003, to break into the home of Vernon Brown while he was present, to extract the combination of his safe from him, to steal the contents of the safe, and then to kill Mr. Brown. The plan was executed shortly thereafter, in the early morning hours of May 10. Dossett and Vaughn went to the rear entrance to the home, where Dossett kicked in the locked door. Dossett, carrying a shotgun, immediately shot Brown in the legs. Dossett, in another attempt to get the safe's combination, also hit Brown in the legs with the butt of the shotgun that he earlier used to shoot him. After failing in the attempt to open the safe, Sage ransacked the house, taking a few small items, and Vaughn and Taylor shot Brown six times, killing him. Then the four of them left the premises and returned together to Taylor's mother's house. Various details were corroborated by additional state's witnesses, Krystal Ballard and Shena and Rochelle DeForge. In addition, two witnesses, Krystal Ballard and P.J. Newland testified that Dossett admitted to being with the other perpetrators.
 {¶ 38} Dossett's defense consisted of a vigorous cross examination of the state's witnesses, including suggestions that they were not believable because they were under the influence of alcohol or drugs; that they were convicted felons; that there were inconsistencies in their testimony; and that they had motives to lie. Dossett also presented alibi evidence through his mother, step-father, and a friend of his mother.
 {¶ 39} When an appellate court considers the manifest weight of the evidence, it must act in effect as a "thirteenth juror," reconsidering the resolution of testimony and evidence as found by the trier of fact. Thompkins, 78 Ohio St.3d at 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. State v.Otten, 33 Ohio App.3d 339, 340. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin,148 Ohio App.3d 293, 2002-Ohio-3410, quoting State v. Haydon
(Dec. 22, 1999), 9th Dist. No. 19094, at 14, further appeal not allowed (2000), 88 Ohio St.3d 1482. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 40} After reviewing the entire record, we find that the jury did not clearly lose its way in convicting Dossett of the charges.
 {¶ 41} The fifth assignment of error is overruled.
 {¶ 42} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Grady, P.J. and Wolff, J. concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).