OPINION
{¶ 1} Defendant-appellant Melissa Payton appeals her conviction and sentence for one count of burglary, in violation of R.C. §2911.12(A)(2), a felony of the second degree.
 {¶ 2} On June 27, 2005, Payton was indicted for one count of burglary of the second degree. Payton pled not guilty to the charge on August 8, 2005. Payton waived her right to a jury trial, and a bench trial was scheduled for December 20, 2005.
 {¶ 3} After a trial to the bench, Payton was found guilty of one count of burglary, in violation of R.C. § 2911.12(A)(2). On March 1, 2006, Payton was sentenced to a two year term of imprisonment, followed by three years of post-release control. She was also ordered to pay the costs associated with her prosecution. Payton filed a timely notice of appeal on March 9, 2006.
 I {¶ 4} Late in the evening on March 22, 2005, Tipp City Police Officers were dispatched to Windridge Apartments in Tipp City, Ohio, after a female resident of the complex called 911 to report that another female had entered her apartment without her consent and attacked her. The caller, who was later identified as the victim, Ann Morton, testified at the bench trial that she was talking to her boyfriend on the phone when she heard someone jump over the fence behind the back door to her apartment. Almost immediately, according to Morton, the person began knocking on her back sliding glass door.
 {¶ 5} When Morton went to the door to see who it was, she encountered Payton in an agitated state demanding to be allowed in the apartment so that she could use the telephone. Morton testified that she told Payton that she was using the telephone and to go away. Payton then allegedly became even more agitated and began pounding on the door demanding to be allowed use of the telephone. Although Payton claimed that she was invited in, there is ample evidence from the complainant that she forced her way in by pushing open the sliding glass door. Upon entry, Payton began kicking and hitting Morton in an attempt to wrestle the telephone from her. Morton testified at trial that the source of Payton's animosity towards her stemmed from Payton's mistaken belief that Morton was having sexual relations with the father of her children, Michael Reynolds. Morton maintained at trial that she and Michael, who lived upstairs from her in the same apartment building, were simply friends who occasionally spent time together.
 {¶ 6} At some point during the attack, Morton was able to call 911 to report the assault while it was taking place. Brandon Reynolds, Michael's brother, who was upstairs watching one of Michael' s children, testified at trial that he heard Morton and Payton yelling at one another. Brandon testified that he told his nephew not to open the door for anyone and then went downstairs to check on the disturbance. He testified that he knocked on the front door of the apartment and Morton let him in and told him repeatedly to make the near-hysterical Payton leave her apartment. Brandon testified that he was able to force Payton out of the back sliding door of the apartment where she had originally entered. Once outside, Brandon testified that Payton yelled a few more derogatory comments at Morton and then jumped back over the fence and ran away. Brandon also testified that he could smell alcohol on Payton's breath and about her person and that she acted as if she were intoxicated.
 {¶ 7} Tipp City Police Officer Corey Rismiller, the officer who originally responded to the 911 call, arrived at Morton's apartment shortly after the attack ended. Officer Rismiller questioned both Morton and Brandon about the incident. Based on the information he received from Brandon, Rismiller returned to his cruiser and drove to the other end of the apartment complex and spoke with other residents who provided him with the information regarding the whereabouts of Payton. Officer Rismiller located Payton who was hiding in the apartment of a friend. After being taken into custody and read her Miranda warnings, Payton authored a written statement in which she denied ever having visited Morton's apartment on the night in question.
 {¶ 8} At trial, however, Payton testified that she had in fact gone to Morton's apartment that night, but only to use the telephone. She further testified that Morton initially allowed her into the apartment. Once Payton was inside, Morton told her that she could not use the telephone, and Payton testified that she became enraged and tried to take the phone away from Morton. Payton testified that she and Morton struggled over the telephone but that she did not punch or kick the victim nor did she force her way into the apartment.
 {¶ 9} As noted above, the trial court found Payton guilty of burglary in the second degree and sentenced her to two years in prison to be followed by three years of post-release control. It is from this judgment that Payton now appeals.
 II {¶ 10} Payton's sole assignment of error is as follows:
 {¶ 11} "DEFENDANT'S CONVICTION FOR BURGLARY IN THE SECOND DEGREE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. SPECIFICALLY, DEFENDANT DID NOT USE FORCE, STEALTH OR DECEPTION TO ENTER THE DWELLING AS REQUIRED UNDER O.R.C. 2911.12 NOR DID SHE POSSESS THE INTENT REQUIRED UNDER 2911.12(A)(2) TO WARRANT A CONVICTION UNDER THAT STATUTE."
 {¶ 12} In her only assignment of error, Payton contends that the trial court erred when it found that she was guilty of second degree burglary because she did not use force, stealth, or deception to gain entrance to Morton's apartment. Additionally, she argues that the trial court's finding is against the manifest weight of the evidence insofar as she did not possess the requisite intent to commit second degree burglary pursuant to R.C. § 2911.12(A)(2). We disagree.
 {¶ 13} "When an appellate court analyzes a conviction under the manifest weight of the evidence standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (Internal citations omitted). Only in exceptional cases, where the evidence `weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." State v. Dossett, Montgomery App. No. 20997,2006-Ohio-3367.
 {¶ 14} R.C. 2911.12(A)(2) states in pertinent part:
 {¶ 15} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 16} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;"
 {¶ 17} After a thorough review of the trial transcript, the evidence demonstrates that Payton forced her way into the apartment after Morton denied her entrance. Payton testified that Morton initially allowed her into the apartment so that she could use the telephone. Once Morton found out that she was going to call Michael Reynolds, however, Morton rescinded her invitation, and a struggle ensued over the phone. Payton's credibility is undermined by the fact that after she was arrested, she signed a written statement in which she denied ever having visited Morton's apartment on the night on question.
 {¶ 18} The testimony of Morton indicates that she told Payton twice that she could not enter the apartment. After the second instance where she denied Payton entrance, Morton testified that Payton forced her way into the apartment by forcing open a closed door. Clearly, the trial court chose to credit the testimony of Morton over that of Payton. Payton initially told the authorities that she did not have any contact with Morton on the night of the alleged attack and did not attempt to revise her story until the eve of trial when confronted with overwhelming evidence of her guilt. That the judge chose to believe Morton's version of events rather than Payton's account does not establish that the trial court lost its way nor does the evidence before us weigh heavily against Payton's conviction.
 {¶ 19} Lastly, Payton argues that the verdict was against the manifest weight of the evidence because when she forced her way into Morton's apartment it was not her specific purpose to commit a crime therein. Rather, Payton testified that she only entered Morton's apartment so that she could use the telephone. Payton contends that the attack on Morton that followed her entry was not intended at the time of entry. Thus, she did not possess the requisite intent to commit any crime at the beginning of the trespass pursuant to R.C. § 2911.12(A)(2).
 {¶ 20} Evidence was adduced at trial which indicated that Payton believed that Morton was carrying on a sexual relationship with the father of her children, Michael Reynolds. Morton testified that before Payton gained entrance into the apartment, she made many derogatory statements to Morton concerning the alleged affair she was having with Michael, including "that's my nigga" and "you can't push his button." Once Payton forced her way into the apartment, she began beating Morton and making the same accusations.
 {¶ 21} In light of this testimony, it is clear that the trial court had before it ample evidence upon which to find that Payton's true intent in going to Morton's apartment that night was to confront the victim regarding the nature of her alleged relationship with Michael, not to simply use the telephone. When Morton denied her entry into the apartment, the evidence demonstrates that an intoxicated Payton became even more enraged, forcing her way inside so that she could physically assault Morton. Thus, the trial court's finding that Payton's behavior constituted second degree burglary was not against the manifest weight of the evidence.
 {¶ 22} Payton's sole assignment of error is overruled.
 III {¶ 23} Payton's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
BROGAN, J. and GRADY, J., concur.