The STATE of Ohio, Appellee,

v.

THOMPSON, Appellant.

[Cite as *State v. Thompson*, 185 Ohio App.3d 639, 2010-Ohio-214.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23342.

Decided Jan. 22, 2010.

John Danish, Dayton City Attorney, and Ebony N. Wreh, Assistant City Prosecutor, for appellee.

Glen H. Dewar, Montgomery County Public Defender, and Tina M. McFall, Assistant Public Defender, for appellant.

Donovan, Presiding Judge.

{¶ 1} This matter is before the court on the notice of appeal of Larry W. Thompson, filed March 5, 2009. Thompson appeals his conviction in Dayton Municipal Court, following a bench trial, of carrying a concealed weapon (a knife), in violation of R.C. 2923.12(A)(1), a misdemeanor of the first degree. Thompson was sentenced to 30 days in the Montgomery County Jail and fined $500 plus court costs. The municipal court suspended Thompson's sentence and $400 of the fine on the condition that Thompson complete a two-year term of nonreporting community control, with no new offenses. Thompson's sentence was stayed pending appeal.

{¶ 2} Thompson asserts two assignments of error on appeal, which we will consider together. They are as follows:

{¶ 3} "The trial court erred in finding appellant guilty of carrying a concealed weapon as the evidence was insufficient to sustain a conviction."

{¶ 4} "The trial court erred in finding appellant guilty of carrying a concealed weapon as the verdict was against the manifest weight of the evidence."

{¶ 5} "In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 70.

{¶ 6} "When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *. Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Dossett*, Montgomery App. No. 20997, 2006-Ohio-3367, 2006 WL 1793245, ¶ 32.

{¶ 7} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against

the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 WL 476684.

{¶ 8} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 9} R.C. 2923.12(A)(1) provides: "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following: (1) A deadly weapon other than a handgun." R.C. 2923.11(A) defines deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 10} At trial, Officer Nancy Shields of the Dayton Police Department testified that she and her partner were on patrol in a marked cruiser on September 6, 2008, at approximately 4:50 p.m., when they were dispatched to 1639 Chapel Street on the report of a disorderly subject wearing a black tank top and blue jean shorts. The subject was "banging his head against the wall and [the female caller who reported him] was in fear of him." When the officers arrived, they observed Thompson, who matched the description, leaving the residence. He appeared to be intoxicated and was "walking off balance." The officers approached Thompson as he walked down the street to pat him down. When Shields asked him if he had any weapons on his person, Thompson told her that he had a knife. When Shields reached into his pocket to remove the knife, she cut her finger on its blade, which was pointing up inside the pocket. Shields also found the sheath to the knife in another pocket. According to Shields, Thompson's speech was slurred and he "was staggering somewhat." At trial, the knife and sheath were admitted into evidence.

{¶ 11} Following Shields's testimony, Thompson moved the court for a judgment of acquittal pursuant to Crim.R. 29, arguing that the state failed to establish that Thompson's knife was a deadly weapon. In overruling the motion, the court responded, "The court has for the record seen the weapon and examined it and it is as the officer testified very sharp. It appears to have about a three inch blade and the court finds that it does qualify as a deadly weapon."

{¶ 12} Roy Williams, Thompson's employer for five years, testified for Thompson. Williams owns a company that does brick work and roofing. On the day of the incident, Thompson was laying bricks in Huber Heights. According to Williams, Thompson needs "something to cut the bands on the brick" to do his

work. To cut through the "thick piece of fiberglass" around the bricks, Williams testified, his workers use "knives, carpet knives, anything with a sharp point."

{¶ 13} According to Williams's testimony, "[W]e use[d] to use a hammer or a hatchet but it breaks the brick and then builders kept complaining about the broken brick because brick are expensive. Then I said we can't use anything to hit them hard with so you are going to have to find something sharp so my brother came up with an idea of using a carpet knife. Well that worked but every time you put the carpet knife down the blade would break because it wasn't thick enough. Then we started using sharp edge knives that you drive down like a roofer would use. Then one day I got a knife out of my truck that I used to cut around the chimney with and drove it down in there and it worked good. I kept buying Larry those for about a year and then he just kept losing them and losing them and losing them. I said, 'Look Larry, this is getting expensive. You are going to have to furnish your own cutting tools.'"

{¶ 14} Williams identified Thompson's knife as "one of the tools he used * * * by the end of it that's been bent from where he drove it down in the brick and pulled it back out." Williams agreed that the knife was "appropriate to accomplish the job." On cross-examination, Williams stated that Thompson usually keeps the knife in his pocket. At the conclusion of Williams's testimony, Thompson again renewed his Crim.R. 29 motion for acquittal, which the court overruled.

{¶ 15} In interpreting R.C. 2923.12(A) and 2923.11(A), we agree "with the guidelines as set forth in *State v. Sears* [(Feb. 27, 1980), Hamilton App. No. C–790156, 1980 WL 352801], where the court observed as follows: 'Before a defendant can be found guilty of carrying a concealed weapon, it must be established beyond a reasonable doubt that: (1) the instrument was capable of inflicting death and either; (2) it was designed or specially adapted for use as a weapon; or (3) it was possessed, carried or used as a weapon.'

{¶ 16} " * * *

{¶ 17} "In determining whether knives, or other useful items, such as screw drivers, hammers, ice picks, etc., are carried as weapons, a trial court may consider a variety of factors, including the nature of the instrument itself, the circumstances under which it is carried, including the time, place, situation in which the accused is found in possession, the manner in which it is carried, the particular person carrying the item, and possibly other expository circumstances which, of course, would necessarily include any peaceful uses which the possessor might have for carrying the questionable instrument." *Dayton v. Hickey* (Sept. 25, 1981), Montgomery App. Nos. CA 7137 and CA 7175.

{¶ 18} As the *Sears* court also noted, " 'There are thousands of varieties of knives in daily use, not designed for use as weapons, even though they may obviously be so used. Were every knife considered to be an instrument designed for use as a weapon, every workman, camper, hunter and fisherman could be found guilty of a first degree misdemeanor on the whim of a law enforcement officer.' " *Mayfield Hts. v. Greenhoff* (Nov. 14, 1985), Cuyahoga App. No. 49741, 1985 WL 8423, quoting *Sears.*

{¶ 19} Having thoroughly reviewed the record in a light most favorable to the prosecution, we conclude that the evidence was such that no rational trier of fact could have found the essential elements of carrying a concealed weapon proven beyond a reasonable doubt. Further, we conclude that in resolving conflicts in the evidence, the trial court clearly lost its way, creating a manifest miscarriage of justice such that the conviction must be reversed.

{¶ 20} Thompson was stopped on the basis of a disorderly-conduct complaint. He was not cited for public intoxication, and the incident at issue did not occur during nighttime hours. While his knife was undoubtedly capable of inflicting death, the state did not meet its burden, as Thompson argued below, of producing evidence that the knife was either designed or specially adapted for use as a deadly weapon, or was possessed, carried, or used for that purpose by Thompson. Williams, Thompson's employer, attributed a peaceful use to the knife, and he identified Thompson's knife by evidence of that use, namely a bend in the knife. Although the court was free to discount Thompson's defense witness, that did not alleviate the state's burden to show the knife was possessed, carried, or used as weapon. Without evidence of the knife's special design or adaption for use as a deadly weapon or evidence that Thompson possessed it, carried it, or used it for that purpose, we conclude that the evidence was insufficient to meet the *Sears* test and that Thompson's conviction is against the manifest weight of the evidence. Thompson's two assigned errors are sustained.

{¶ 21} Accordingly, the judgment of the trial court is reversed.

Judgment reversed.

BROGAN and FROELICH, JJ., concur.