[Cite as *State v. Vanderhorst*, 2012-Ohio-2762.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97242**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## QUENTIN VANDERHORST

DEFENDANT-APPELLANT

**JUDGMENT:**
**CONVICTIONS AFFIRMED; SENTENCE REVERSED**
**IN PART AND REMANDED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-540773

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** June 21, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Chief Public Defender
Nathaniel McDonald
Assistant Public Defender
310 Lakeside Avenue, Suite 400
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Nicole Ellis
John Wojton
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1}   Defendant-appellant, Quentin Vanderhorst ("Vanderhorst" or "defendant"), appeals from his convictions for kidnapping, aggravated robbery, attempted murder, and felonious assault.   For the reasons set forth below, we affirm the convictions, reverse as to sentencing on the aggravated robbery and kidnapping convictions, and remand for further proceedings.

{¶2}   On August 26, 2010, Vanderhorst and codefendant, Antwonette Ranzy ("Ranzy"), were indicted pursuant to a seven-count indictment in connection with the September 17, 2008 shooting of Isaiah Randle ("Randle").   Counts 1 and 2 charged them with kidnapping, in violation of R.C. 2905.01(A)(2) and 2905.01(A)(3).   Counts 3 and 4 charged them with aggravated robbery, in violation of R.C. 2911.01(A)(1) and 2911.01(A)(3).   Count 5 charged them with conspiracy to commit aggravated murder, in violation of R.C. 2903.01, and Counts 6 and 7 charged them with felonious assault, in violation of R.C. 2903.11(A)(1) and 2903.011(A)(2).   All charges also set forth one- and three-year firearm specifications.

{¶3}   On April 11, 2011, Vanderhorst and Ranzy pled guilty to felonious assault as charged in Count 6, with a one-year firearm specification.   At a sentencing hearing on May 26, 2011, the trial court reviewed the presentence report, and Isaiah Randle addressed the court and described the defendant's actions and the injuries he sustained. According to Randle, on the night before the shooting, Ranzy (Randle's former

girlfriend), called him and asked to spend some time with him. He had plans to visit a friend, but he invited her to come along. During the drive, she asked Randle for $10. He said that he could not give her money, and she then got out of the car. The next morning, as he was preparing to drive to work, she and Vanderhorst confronted him and demanded the keys to his apartment. Randle charged at Vanderhorst, and Vanderhorst shot him in the head. Randle got up and ran, and Vanderhorst continued shooting at him, grazing him in the arm. Randle further maintained that he saw Vanderhorst and Ranzy after they were charged in this matter, and Vanderhorst made a motion with his hand, as if pointing a gun at Randle. On other occasions, he saw Ranzy and Vanderhorst's sister, and they laughed at him. Randle claimed that he spoke to a prosecuting attorney about these incidents, but nothing ever came of it. Following Randle's statements, Vanderhorst and Ranzy moved to withdraw their guilty pleas. The trial court granted the motions, and the matter proceeded to a joint jury trial on July 28, 2011.

{¶4} The State presented the testimony of Randle, Linda Cleary Briggs ("Briggs"), Tyrone Simon ("Simon"), Michael Shepherd ("Shepherd"), Cleveland Police Detective Filmore Evans ("Detective Evans"), and Cleveland Police Detective David Stokes ("Detective Stokes").

{¶5} Randle testified that he dated Ranzy from the fall of 2007 until February 2008, and during the last few weeks of their relationship, she stayed at his apartment at East 123rd Street and Harvard Avenue. During this time, Randle worked for a roofing company and generally left his apartment at around 6:15 a.m. Randle also knew

Vanderhorst, who lived a few blocks away on Durkee Avenue. Vanderhorst frequently came to Randle's apartment to socialize. On September 16, 2008, Ranzy called Randle and asked if she could spend some time with him. Randle already had plans to visit their mutual friend, Lanecia Perry, but he called Perry to find out if he could bring Ranzy with him. Randle subsequently picked up Ranzy and drove her to Perry's house where they watched a movie and smoked marijuana. Randle then drove her to Vanderhorst's house where she had been staying.

{¶6} Randle further testified that on September 17, 2008, at approximately 6:00 a.m., he left his apartment and proceeded to the car he customarily drove, a 1986 Caprice Classic, owned by his friend Asia Elder. He placed his tools in the trunk, unlocked the driver's side door and the ignition column lock, and deactivated the kill switch. As Randle began to shut the driver's side door, Vanderhorst confronted him, aiming a gun at his head and demanding the keys to Randle's apartment. Randle offered Vanderhorst $20, but Vanderhorst continued to demand the keys. Ranzy then approached from the rear driver's side of the vehicle and ordered Randle to unlock the back door of the vehicle, but he refused. Ranzy then said that if he did not comply, she would have Vanderhorst shoot him. Randle reached back to unlock the door, and as Vanderhorst looked away, Randle "rushed him" and fled. Randle tripped and fell to the ground, and Vanderhorst shot him in the head. Randle got up and continued to run in a zigzag pattern toward the area of Harvard Avenue and East 131st Street. According to Randle, Vanderhorst continued to shoot at him as he fled, striking him in the shoulder.

**{¶7}** Randle fled to a nearby gas station but could not obtain help. He went to a bus stop and called his friend, Shepherd, and reported that Ranzy, a.k.a. "Nettie," and Vanderhorst had tried to rob and kill him. Randle called 911. A teen who was at the bus stop flagged down a bus driver. The bus drive then contacted Emergency Medical Service ("EMS"). After the paramedics arrived, Randle called his employer to inform him of what had happened.

**{¶8}** Randle was taken to MetroHealth Hospital. According to Randle, the bullet lodged in his head near his spinal cord and cannot be removed due to the risk of paralysis. Immediately following the shooting, Randle spoke to Cleveland Police about the matter, but he did not identify the assailants. He instead was determined to obtain "street justice." Later, however, he spoke with a detective at the Fourth District and informed him that he had been shot by "a girl named Nettie, [or] Antwonette * * * and a guy named Quentin." He subsequently identified Vanderhorst and Ranzy from photo arrays.

**{¶9}** Randle testified that he was positive that he had been shot by Vanderhorst and Ranzy. Although the shooting did not occur during daylight hours, there is a streetlight nearby, and the parking lot has a light. He denied that he had a weapon during the encounter, and he testified that when he spoke to the police, he offered to take a gunshot residue test. He admitted, however, that he has felony convictions for drug trafficking, assault on a police officer, and forgery. He also acknowledged that he told EMS personnel that he knows his assailants but did not want to say anything further.

{¶10} Briggs testified that between 6:00 a.m. and 6:30 a.m. on September 17, 2008, she was waiting for a bus at the intersection of East 123rd and Harvard. She observed a man starting his car in the lot of the apartment building across the street from the bus stop. A young girl ran around the corner of the building, watched the man in the car, then returned to the front of the building. A few moments later, she saw the same girl and a man exit the front door of the apartment building and approach the man in the car. According to Briggs, the men then began to fight and the gun went off. The man from the car fled toward the bus stop and Briggs called 911. The man from the car fled eastward on Harvard Avenue. As the male assailant chased him, Briggs heard him say, "Come on, he's getting away." Briggs also heard two or three more gunshots.

{¶11} Briggs acknowledged that she told the 911 dispatcher that the men were "shooting at each other." She testified that only the man who came to the lot with the girl had a weapon. She did not speak with the police after the shooting.

{¶12} Simon testified that he was also waiting for a bus at the corner of East 123rd and Harvard Avenue on the morning of the shooting. He observed a man and woman in the front doorway of the apartment building across from the bus stop. The couple remained there for approximately ten minutes. Simon next observed Randle exit the rear of the apartment building, and the two people from the front of the building then "went around the corner and started messing" with Randle. Simon next observed a man chasing after Randle and shooting at him, as Randle fled in a zigzag pattern toward East

131st Street. According to Simon, the woman was approximately five feet four inches, and the man with her was approximately six feet tall.

**{¶13}** Approximately one week later, Simon spoke with the police and subsequently identified Ranzy from a photo array. He identified her again in court; however, he could not identify the man who had the gun.

**{¶14}** Detective Evans testified that he interviewed Randle in the hospital on September 18, 2008. Randle stated that he had been shot by his former girlfriend, "Antwonette Ramsey" and "Quentin," who lived on Durkee Avenue. Detective Evans prepared a photo array of six men that included Vanderhorst, and a second photo array of six women that included Ranzy. Randle identified Vanderhorst and Ranzy from the photo arrays.

**{¶15}** Detective Evans also canvassed the area for possible witnesses. He subsequently spoke with Simon about the shooting and took a statement from him. Simon also identified Ranzy from a photo array, but he did not identify Vanderhorst.

**{¶16}** Detective Stokes testified that he responded to MetroHealth Hospital to conduct a gunshot residue test on Randle. He determined, however, that because Randle's hands had not been secured, this test would not be reliable. Detective Stokes also acknowledged that Randle's clothing was not tested.

**{¶17}** Shepherd testified that Randle, one of his distant relatives, called him immediately after the shooting. According to Shepherd, Randle was "huffing and puffing [and] saying Quentin just shot him in his head." According to Shepherd, Randle

sounded disturbed and scared, so Shepherd remained on the telephone with him until an ambulance arrived. Shepherd then went to the MetroHealth Hospital Emergency Room to be with Randle.

**{¶18}** Following the presentation of the State's case, the trial court denied a defense motion for a judgment of acquittal and the defendants presented evidence.

**{¶19}** Lincoln Wayne Daniels ("Daniels"), the owner of L&D Construction & Building Incorporated, testified that in 2008 his company paid Randle a total of $735, which reflected only 40 or 50 hours of work.

**{¶20}** Vanderhorst testified that he and Ranzy have been together since March 2008 and have two children. He admitted that he knows Randle and has been at his apartment, but he denied shooting him. Vanderhorst maintained that he was asleep at his home at the time of the shooting, and that his brothers and sisters were also home with him.

**{¶21}** Desmond Vanderhorst ("Desmond"), defendant's older brother, testified that Ranzy spent the night with defendant at the family's home on Durkee Avenue the night of September 16, 2008. At 7:00 a.m. the next morning, both defendant and Ranzy were asleep in defendant's bedroom.

**{¶22}** Ranzy testified that during the time that she stayed with Randle, he worked only occasionally and did not have a regular morning routine of leaving his apartment early in the morning. She acknowledged that after she moved out of Randle's apartment, she once contacted him about fixing her mother's roof, but she stated that she did not

speak with him again. She specifically denied spending time with Randle on the night before the shooting, stating that she was with Vanderhorst at his house and that they both were asleep at the time of the shooting.

**{¶23}** Lanecia Perry ("Perry") testified on rebuttal that Randle and Ranzy, or "Nettie," picked her up from her aunt's house and drove her home on the night of September 16, 2008. Perry invited them inside and they watched television. During this visit, Ranzy seemed upset and asked Perry if she was dating Randle. Perry indicated that she was not.

**{¶24}** The jury found both defendants guilty of all charges on August 2, 2011. The trial court subsequently merged the kidnapping charges into one conviction, merged the aggravated robbery charges into one conviction, and merged the firearm specifications for these offenses into a single specification. The court also merged the felonious assault and attempted murder charges into a single conviction.

**{¶25}** The court sentenced Vanderhorst to a total of 13 years of imprisonment and five years of postrelease control. He now appeals, assigning eight errors for our review.

**{¶26}** Vanderhorst's first assignment of error states:

Quentin Vanderhorst's convictions are against the manifest weight of the evidence, in violation of his right to due process of law under the 14th Amendment to the Constitution of the United States, and Article 1, Section 14, of the Ohio Constitution.

**{¶27}** In reviewing a challenge to the manifest weight of the evidence supporting a conviction, this court weighs the evidence and all reasonable inferences, considers the

credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶28} Applying the foregoing to this matter, we conclude, after weighing the evidence and all reasonable inferences, that the convictions are not against the manifest weight of the evidence. The State's evidence indicated that Ranzy had lived with Randle and knew his work schedule. There was evidence that she was with Randle on the night before the shooting and seemed upset with him. The State also presented clear and compelling testimony from Randle that, as he sat in the car and prepared to leave for work, Vanderhorst aimed a gun at his head and demanded the keys to his apartment. Ranzy approached and ordered Randle to unlock the back door, threatening to have Vanderhorst shoot him if he did not comply. Randle managed to flee, but he tripped as he ran, and Vanderhorst shot him in the head. Defendant continued shooting as Randle ran for help. Although Randle did not immediately provide the police with the names of his assailants, he later provided their names to the police and identified them in photo arrays. Shepherd testified that Randle called him immediately after the shooting and was upset. He reported to Shepherd that the defendant had just shot him in the head.

**{¶29}** Briggs also testified that she observed a young girl surreptitiously watching Randle get into his car and saw the same girl and a man approach Randle. According to this witness, the men then began to fight and the gun went off. The male assailant chased the man who had been in the car, firing two or three additional shots. Simon likewise established that a man and woman confronted Randle in the parking lot of his apartment, and he observed the man chasing after Randle and shooting at him.

**{¶30}** Vanderhorst and Ranzy denied shooting Randle, and their witnesses testified that the defendants were asleep at Vanderhorst's home at the time of the shooting. This evidence was unsubstantiated and self-serving, and in light of the fact that it was presented relatively late in the investigation, could be perceived as vague and speculative in relation to the exact date of the shooting. Moreover, although Ranzy denied spending time with Randle the night before the shooting, rebuttal witness Perry established that they were together and that Ranzy seemed upset.

**{¶31}** In light of the foregoing, the jury did not lose its way and did not create a manifest injustice in convicting Vanderhorst of the offenses. This assignment of error lacks merit.

**{¶32}** Vanderhorst's second assignment of error states:

> The trial court erred when it prohibited defense counsel from using Isaiah Randle's prior statements to impeach his trial testimony.

**{¶33}** Within this assignment of error, Vanderhorst complains that the trial court erred in refusing to permit him to cross-examine Randle from unsworn statements Randle

made on April 11, 2011 during the sentencing portion of a proceeding taken in connection with the guilty pleas of the defendants, which were later withdrawn.

**{¶34}** Trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, witness safety, or repetitive, marginally relevant interrogation. *State v. Clark*, 8th Dist. No. 95928, 2011-Ohio-4109, citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**{¶35}** Evid.R. 613(A) governs examining a witness concerning a prior statement and provides:

> In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

**{¶36}** The grant or denial of a motion in limine is an interlocutory and preliminary order. *See State v. Grubb*, 28 Ohio St.3d 199, 200-201, 503 N.E.2d 142 (1986). In order to preserve the matter for appeal, the parties must renew their motions or objections at the appropriate time during trial. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315; *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus; *State v. Wilson*, 8 Ohio App.3d 216, 456 N.E.2d 1287 (8th Dist.1986); *State v. Shepherd*, 8th Dist. No. 81926, 2003-Ohio-3356.

**{¶37}** In this matter, defendant's trial counsel sought to cross-examine Randle with respect to a statement he made prior to sentencing during failed plea proceedings, arguing specifically that he omitted an earlier contention that Ranzy asked him for money and

argued with him on the night before the shooting. The State argued that it could then, in fairness, inquire as to circumstances surrounding the prior statement. The trial court stated:

> This is very unusual because this was a sentencing hearing at which — prior to which your clients had entered pleas to felonious assault charges, and because you didn't like what the victim said at the sentencing hearing you opted to withdraw your guilty plea. I've never had that happen before. And I'm concerned that you now attempt to pick apart that, those comments which are not under oath, very emotional, not assisted at all by the State at that juncture.

> Perhaps I used poor judgment in allowing you to withdraw your pleas because — and I thought the context in which you withdrew them, if I recall correctly, was that the State had somehow failed to provide you with certain information. * * *

> And there has been nothing presented to the Court subsequently to challenge the State on the discovery that they gave you and so forth. * * * So I have to mull this over as to whether or not I'll permit you to use that at all.

> * * *

> So I thought you should know my thinking on this. That's the context in which I am looking at this request by the defense. So absolutely the victim can't suggest, say he was in court for sentencing or something like that. We just can't allow that. And he should be admonished in the strongest terms in private by the State. *But beyond that, I'm not sure that I'm going to permit questioning based on what was said at sentencing.*

(Emphasis added.)

{¶38} Thereafter, Ranzy and Vanderhorst cross-examined Randle about his initial plan to obtain "street justice" rather than cooperate with the police, the issue as to whether he also had a gun and shot at the defendants, his prior record, whether the defendants demanded the money on his person, and whether he knew Simon and Briggs. Ranzy's

attorney then cross-examined Randle about his prior relationship with her, whether it was ever violent, the defendants' prior visits to Randle's apartment, Ranzy's mother's disapproval of her relationship with Randle, Randle's earnings and work schedule, and the locations of the events at issue. Randle conceded under cross-examination that on the night before the shooting, he did not fight with Ranzy.

{¶39} In light of the foregoing, the record does not reveal that the attorneys renewed the motion in limine to address Randle's prior statement during the May 26, 2011 sentencing hearing. We therefore find no abuse of discretion, as the trial court permitted thorough cross-examination of Randle, and the issue of Randle's prior statement during the May 26, 2011 sentencing hearing appears to have been waived.

{¶40} Moreover, in our view, the evidence concerning whether Ranzy asked Randle for money and argued with him on the night before the shooting and whether they later threatened Randle did not change the outcome in this matter in light of the compelling evidence of guilt.

{¶41} This assignment of error is without merit.

{¶42} Vanderhorst's third assignment of error states:

Quentin Vanderhorst was denied his due process right to a fair trial as a result of prosecutorial misconduct.

{¶43} In this assignment of error, defendant complains that the prosecuting attorney erroneously informed the jury that Briggs had identified defendants as the assailants, disclosed the penalty associated with a firearm specification, published the

indictment and a witness statement to the jury during trial, and improperly characterized the defense as involving a "big conspiracy."

**{¶44}** In reviewing a claim of prosecutorial misconduct, this court determines whether the prosecutor's remarks were improper and whether the prosecutor's remarks affected the appellant's substantial rights. *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The key consideration of the analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61. Further, the court must consider whether, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121.

**{¶45}** It is well settled that considerable latitude is permitted in closing arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768 (1984).

**{¶46}** A prosecutor may not allude to matters that are not supported by admissible evidence. *Smith* at 14. A prosecutor may, however, comment upon what the evidence has shown and upon the reasonable inferences from that evidence. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). As a general rule, questions of punishment have no place in the trial of guilt or innocence. *State v. Dossett*, 2d Dist. No. 20997, 2006-Ohio-3367.

**{¶47}** Applying the foregoing to this matter with regard to the prosecuting attorney's erroneous statement in closing argument that Briggs had identified defendant,

we note that there was no objection. We find no plain error. In the context of the entire trial, the statement was not so egregious that it renders the trial fundamentally unfair; and, in any event, we find it clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would nonetheless have found the defendant guilty in light of Randle's compelling testimony, the identification of Ranzy, Shepherd's testimony, and the considerable evidence linking Ranzy and defendant.

{¶48} As to the prosecuting attorney's comment in describing the charges during closing argument, the prosecutor stated, "this has both one- and three-year firearm specifications." The defense objected and the court cautioned the jury as follows:

Ladies and gentlemen, the matter of punishment or a sentence is not within the province of the jury. You will not consider what any punishment would be for any offense or specification in the indictment. And I ask that you ignore any references to it.

{¶49} In this matter, we conclude that the remarks did not deprive defendant of a fair trial. The error was clearly harmless beyond a reasonable doubt. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). This assignment of error lacks merit.

{¶50} With regard to the prosecuting attorney publishing the indictment and the statement to the jury during the trial, we again find the conduct to be non-prejudicial because the court reacted quickly and the exhibits were quickly removed. (Tr. 498, 805.)

{¶51} As to the comment that the defense involved a "big conspiracy," a similar comment was deemed a "bit overboard, and [veering] into dangerous territory," but not

found to be prejudicial in *United States v. Warshak*, 631 F.3d 266, 302-303 (6th Cir.2010). Likewise, we find no prejudice herein.

**{¶52}** This assignment of error is without merit.

**{¶53}** Vanderhorst's fourth assignment of error states:

The trial court erred in instructing the jury regarding defendant's flight.

**{¶54}** As an initial matter, we review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026, ¶ 50. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984.) Flight from justice may be indicative of a consciousness of guilt but "a mere departure from the scene of the crime is not to be confused with a deliberate flight from the area in which the suspect is normally to be found." *State v. Norwood*, 11th Dist. Nos. 96-L-089 and 96-L-090 (Sept. 30, 1997).

**{¶55}** With regard to the form of the instruction, we note that in this matter, the court instructed the jury as follows:

> There may be evidence in this case to indicate that the defendant fled from the scene of the crime. Flight does not in and of itself raise the presumption of guilt but it may show consciousness of guilt or a guilty connection with a crime. If you find the defendant did flee from the scene of the crime, you may consider this circumstance in your consideration of the guilt or innocence of the defendant.

**{¶56}** The instruction is identical to an instruction approved by this court in *State v. Hamilton*, 8th Dist. No. 86520, 2006-Ohio-1949.

**{¶57}** As to whether the instruction was warranted herein, we note that in *State v. Villa*, 9th Dist. No. 05CA008773, 2006-Ohio-4529, the court held that the trial court did not abuse its discretion in giving a flight instruction where the evidence established that the defendant departed the scene, was sought for questioning about the crime, and could not be located. *Accord State v. Santiago*, 8th Dist. No. 95516, 2011-Ohio-3058.

**{¶58}** In this matter, there was evidence that at 7:00 a.m., on the morning of the shooting, that is, shortly after the shooting, Ranzy and Vanderhorst were observed at the Durkee Avenue home. Nonetheless, the record does not clearly demonstrate that they fled from the scene or fled from law enforcement, and they were arrested without incident after warrants were issued. We conclude, however, that any error in connection with the issuance of this instruction was harmless and did not change the outcome of the trial.

**{¶59}** This assignment of error is without merit.

**{¶60}** Vanderhorst's fifth assignment of error states:

Quentin Vanderhorst was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

**{¶61}** Within this assignment of error, Vanderhorst complains that his trial counsel did not effectively cross-examine Simon. By identifying Ranzy, Simon provided key identification evidence. Defendant concedes that Simon did not identify him at trial, but he maintains that Simon's testimony tended to show defendant's involvement. Defendant additionally complains that his trial attorney did not properly explore the issue of whether Simon knows Randle, and this issue involves Simon's credibility.

**{¶62}** As noted previously, Simon did not identify defendant. We therefore conclude that defendant's trial counsel could have determined, as a reasonable trial strategy and tactical decision, to limit the cross-examination of Simon solely to his inability to make an identification of the shooter. Such decision does not constitute the ineffective assistance of counsel. *State v. Revels*, 12 Dist. Nos. CA2001-09-223 and CA2001-09230, 2002-Ohio-4231, citing *State v. Clayton*, 62 Ohio St.2d 45, 48-49, 402 N.E.2d 1189 (1980).

**{¶63}** This assignment of error is without merit.

**{¶64}** Vanderhorst's sixth assignment of error states:

The cumulative errors in this case deprived Quentin Vanderhorst of a fair

trial.

**{¶65}** Cumulative error exists only where trial errors actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In this matter, however, we have recognized only harmless, nonprejudicial error, which in our view, did not cumulatively deprive defendant of a fair trial. Therefore, we reject the claim of cumulative error herein. *See State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

**{¶66}** Vanderhorst's seventh assignment of error states:

The trial court violated the United States and Ohio Constitutions when, with respect to each alleged victim, it failed to treat Quentin Vanderhorst's

convictions for kidnapping and aggravated robbery as allied offenses of similar import.

{¶67} In *State v. Johnson*, 128 Ohio St.3d 1405, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court established, through a two-part test, that the conduct of the accused must be considered when determining whether offenses are allied offenses of similar import subject to merger.

{¶68} In the first part of the test, trial courts must determine whether the offenses "correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *Id*. at ¶ 48. In making this determination, it is not necessary that the commission of one offense would always result in the commission of the other; but instead, the question is whether it is possible for both offenses to be committed with the same conduct. *Id*. Next, the trial court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind."

{¶69} If the answer to both questions is yes, then the offenses are allied offenses of similar import and must merge. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge. *Id*. at ¶ 48-51.

{¶70} Counts 1 and 2 charged Vanderhorst with kidnapping, in violation of R.C. 2905.01(A)(2) (to facilitate a felony) and R.C. 2905.01(A)(3) (to terrorize or inflict serious physical harm). Counts 3 and 4 charged him with aggravated robbery, in

violation of R.C. 2911.01(A)(1) (with a deadly weapon) and R.C. 2911.01(A)(3) (inflicting or attempting to inflict serious physical harm). Defendant was convicted of all four offenses.

{¶71} The kidnapping statute, R.C. 2905.01, provides, in relevant part as follows:

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter;

(3) To terrorize, or to inflict serious physical harm on the victim or

another[.]

{¶72} The aggravated robbery statute, R.C. 2911.01, provides, in relevant part, as

follows:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(3) Inflict, or attempt to inflict, serious physical harm on another.

{¶73} In this matter, the State established the offenses of both aggravated robbery and kidnapping based upon Vanderhorst's actions in brandishing a handgun to restrain Randle and to facilitate the planned theft of his keys. These offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, as the same conduct satisfies the elements of both the

aggravated robbery and the kidnapping. The offenses of aggravated robbery and kidnapping were allied offenses of similar import. *Accord State v. Hicks*, 8th Dist. No. 95169, 2011-Ohio-2780, ¶ 11; *State v. Bauldwin*, 8th Dist. No. 94876, 2011-Ohio-1066.

{¶74} Moreover, the evidence demonstrated that the offenses were "committed with a single state of mind," as the restraint here was incidental to the commission of the underlying aggravated robbery. The restraint of Randle did not subject him to a substantial increase in risk of harm separate from the underlying aggravated robbery. *Accord Hicks* at ¶ 13.

{¶75} The offenses are therefore allied offenses of similar import and must merge. This assignment of error is well taken.

{¶76} Vanderhorst's eighth assignment of error states:

Counsel's failure to request waiver or object to court costs for an indigent violated Quentin's 6th Amendment right to effective assistance of counsel.

{¶77} R.C. 2947.23(A)(1) governs the imposition of costs and provides as follows:

In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution and render a judgment against the defendant for such costs.

{¶78} This statute has been held to apply even to indigent defendants. A trial court may, in its discretion, waive these costs. *State v. White,* 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8. However, the defendant must first make a motion for waiver at the time of sentencing. *State v. Clevenger*, 114 Ohio St.3d 258,

2007-Ohio-4006, 871 N.E.2d 589, ¶ 5, citing *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus. Nonetheless, a claim of ineffective assistance of counsel in connection with the imposition of costs will be rejected on appeal where the defendant makes "no demonstration that a 'reasonable probability' exists that the lower court would have waived payment of the costs" if such motion had been filed. *State v. Maloy*, 6th Dist. No. L-10-1350, 2011-Ohio-6919, ¶ 12, citing *State v. King*, 6th Dist. No. WD-09-069, 2010-Ohio-3074, ¶ 11.

{¶79} In this matter, Vanderhorst was found to be indigent and the trial court appointed counsel for him and "enter[ed] a judgment against him in an amount equal to the costs of this prosecution." Vanderhorst's trial counsel did not file a motion to waive costs, but there is no indication on the record presented that there is a reasonable probability that the lower court would have waived payment of the costs if such motion had been filed. Accordingly, we cannot conclude that he was denied effective assistance of counsel for failing to object to the imposition of these costs. This assignment of error is without merit.

{¶80} In accordance with the foregoing, Vanderhorst's convictions are affirmed, the sentence imposed for aggravated robbery and kidnapping is reversed, and this matter is remanded for further proceedings according to law and consistent with this opinion. Upon remand, the State will elect which of the allied offenses it wishes to pursue at sentencing for which the defendant should be punished. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182. The matter is affirmed in all other respects.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
JAMES J. SWEENEY, J., CONCUR.