[Cite as *State v. Dunn*, 2015-Ohio-3138.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101648**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAMON DUNN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-568849-A

**BEFORE:** Keough, J., Jones, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 6, 2015

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1350 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Mike DeWine
Attorney General
By:   Micah Ault
          Brian S. Deckert
Assistant Attorneys General
615 W. Superior Street, 11th Floor
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Damon Dunn, appeals his convictions. For the reasons that follow, we affirm.

{¶2} In November 2012, Dunn was indicted for the murder of Kenneth Adams. He was charged with one count of aggravated murder, in violation of R.C. 2903.01(A), one count of murder, in violation of R.C. 2903.02(B), two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2), and one count of kidnapping, in violation of R.C. 2905.01(A)(2). Each of these counts contained both one- and three-year firearm specifications. He was also charged with one count of having weapons while under disability in violation of R.C. 2923.13(A)(3). Dunn elected to bifurcate the weapons under disability count, trying that charge to the bench. The remaining counts were tried to the jury where the following relevant evidence was presented.

{¶3} In the early evening of May 18, 2012, Officer John Marincek responded to a call of shots fired at the Red Zone car wash on East 140th Street. When he arrived on scene, he found a male, later identified as Adams, lying on the floor with multiple gunshot wounds to the thorax and abdomen area. According to Dr. Joseph Felo, the medical examiner, Adams sustained nine gunshot wounds, clustered around his right shoulder and upper arm. The medical examiner also testified that the bullet holes in Adams's clothing were consistent with someone shooting the victim while standing over

him. Toxicology reports revealed that Adams had a significant amount of PCP in his system.

{¶4} Working at the car wash on the day of the murder was Shannon Buffington, who knew Adams and Dunn. According to Buffington, Adams was standing outside of the wash-bay area looking at his cell phone. He testified that he was washing a car, but when he heard gun shots, he ducked down in front of the car.

{¶5} Dwight Robinson was also working at the car wash and testified that he knew both Dunn and Adams, but saw neither of them that day. Furthermore, he was unable to recognize the person shown on the video running from the car wash.

{¶6} Geraldine Lowery testified that she was working at the car wash and knew both Adams and Dunn. She stated that she knew Dunn as "Rambo," from his days when he worked at the car wash. She testified that when she heard shots fired, she locked the door to the office. Lowery and James Flood both called police. In the recorded 911 call made by Flood, it can be heard in the background someone saying the name "Rambo."

{¶7} Kendrall Brown, the manager of Red Zone, testified that he was washing a truck when he heard "some guys talking," then heard a "popping noise," which sounded like "firecrackers." He testified that he could not recognize anyone in the surveillance video.

{¶8} Antoinette Whitted, a customer at the car wash, reluctantly testified about the shooting. Although she admitted she made a statement to police about the shooting, including a description of the shooter, she was unable to recall any details even with the

assistance of her written statement. Furthermore, even though she saw the shooter, when she was presented with a photo array of suspects, which included Dunn, she picked someone other than Dunn with 50% certainty.

{¶9} The only person who could identify Dunn as the shooter was Reginald Longstreet. He testified that on May 18, 2012, he met up with Adams and smoked PCP. He testified that he came back to the car wash around 4:00 p.m. and spoke with Brown, who was washing a car. At this time, Dunn walked up the street and into the car wash, and had a brief conversation with some of the workers. According to Longstreet, he heard Adams walk inside of the car wash dragging his feet saying, "let me holler at you about that bull--," however, before he could finish his sentence, Longstreet heard gunshots. He looked inside the business and saw Dunn standing over Adams shooting him multiple times. According to Longstreet, Dunn held two guns, but one appeared to jam. After taking items from the victim's pockets, Dunn looked up at Longstreet, and ran across the street through a field.

{¶10} Longstreet admitted that he was currently serving a federal prison sentence. He further admitted that he did not give a statement to police about Adams's murder and Dunn's involvement until November 2012 because he fled the state of Ohio to avoid federal charges. Longstreet's initial description of the shooter as being dressed in "all black" was contrary to the video showing the shooter wearing a white shirt.

{¶11} During the investigation of the shooting, police recovered two different types of shell casings from the scene. Detectives were also able to obtain a surveillance

video that depicted the events outside of the car wash during the time of the murder, including a person wearing a white shirt running from the car wash. However, the video was not of sufficient quality to allow a determination of the identity of the person.

{¶12} Detective Griffin testified that he took a statement from Dunn approximately six months after the murder. During that recorded interview, Dunn stated that he was with Marquita Lewis and Sarah Mossor on the day of the murder. However, Lewis later told police and testified that she was not with Dunn and Mossor at Edgewater Beach that day. But Mossor told police and testified that she was with both Lewis and Dunn at the beach.

{¶13} Also during this interview, Dunn provided police with both his and Mossor's cell phone information. The jury heard factual testimony from a Verizon Wireless representative about calls and text messages placed and received by these two cell phone numbers on the day of the murder. The jury also heard factual testimony about which cellular phone tower was utilized and recorded in the phone records and viewed a corresponding map plotting the location of those towers.

{¶14} Following the State's case, the kidnapping charge and one count of felonious assault were dismissed. The jury returned guilty verdicts on the remaining counts and specifications and the court found Dunn guilty of having weapons while under a disability. Dunn was sentenced to 25 years to life for aggravated murder consecutive to the three-year firearm specification.

{¶15} Dunn now appeals, raising three assignments of error.

## I. Dismissal of Indictment

{¶16} Trial was scheduled in this matter for April 22, 2013. Ten days prior to trial, Dunn filed a notice of alibi, stating that at the time of the murder he was at Edgewater Beach with Mossor and Lewis. At that time, Dunn had not waived his right to a speedy trial.

{¶17} One week prior to trial, Aaron Brockler, the assistant county prosecutor assigned to prosecute the murder charges against Dunn, showed Dunn's counsel a printout from Facebook, an online social media website. The printouts were conversations dated December 14, 2012, purportedly between "Taisha Little," the mother of Dunn's child, and Dunn's alibi witnesses, Mossor and Lewis. These conversations were initiated by Little. According to Brockler, Little was trying to establish that both Mossor and Lewis were going to lie for Dunn at trial. Based on the new evidence, which Brockler characterized as "blow[ing] up [Dunn's] alibi," Dunn temporarily waived his speedy trial rights until July 15, 2013, to investigate Little's involvement.

{¶18} In an attempt to locate Little, a subpoena was issued for her Facebook records. The subpoena and subsequent investigation revealed that Little's Facebook profile was created on a Cuyahoga County government computer. On May 7, 2013, Brockler admitted that he created the fictitious profile of Little, and pretended to be her in the communications with both Mossor and Lewis. According to Brockler, his purpose was to make Mossor mad with the hope that she would not testify in accordance with the alibi.

**{¶19}** As a result, an internal investigation was conducted, Brockler was terminated by the county prosecutor's office, a special prosecutor was assigned, and Dunn moved to dismiss the indictment pursuant to Crim.R. 48(B) contending that the state's conduct was egregious. On November 5, 2013, the trial court conducted an evidentiary hearing on Dunn's motion, which included testimony from Dunn's attorney, Mossor, the detectives that investigated the Facebook account, and another assistant county prosecutor. Brockler was also called as a witness, but he invoked his Fifth Amendment right during examination.

**{¶20}** After considering the testimony, evidence, including internally sealed documents and records, the trial court denied Dunn's motion to dismiss. In so ruling, the trial court concluded that the conduct and actions by Brockler were not sanctioned by the county prosecutor's office and dismissing the case would only serve to punish the entire prosecutor's office. According to the trial court, the need to punish the entire office had "not been established by this record."

**{¶21}** In his first assignment of error, Dunn contends that the trial court erred and abused its discretion in denying his motion to dismiss the indictment because of governmental misconduct.

**{¶22}** Dunn moved to dismiss the indictment pursuant to Crim.R. 48(B). Crim.R. 48(B) provides, "Dismissal by the Court. If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its findings of fact and reasons for the dismissal." A trial court has the authority to dismiss a case

pursuant to Crim.R. 48(B) on account of misconduct of a prosecutor, however, this authority is not without limitation. *Maple Hts. v. Redi Car Wash*, 51 Ohio App.3d 60, 554 N.E.2d 929 (8th Dist.1988), paragraph three of the syllabus. A trial court may not dismiss a case with prejudice unless a defendant has been denied a constitutional or statutory right that would itself bar prosecution. *State v. Sutton*, 64 Ohio App.2d 105, 108, 411 N.E.2d 818 (9th Dist.1979).

{¶23} Trial courts possess the inherent power to dismiss the cases on their dockets. *State v. Rivers*, 8th Dist. Cuyahoga No. 83321, 2004-Ohio-2566, ¶ 8. Thus, the decision whether to dismiss a criminal case lies in the sound discretion of the trial court and that decision will not be overturned absent an abuse of discretion, which is more than an error of law or judgment; rather, it implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Herring*, 94 Ohio St.3d 246, 255, 2002-Ohio-796, 762 N.E.2d 940; *State v. Clark*, 71 Ohio St.3d 466, 470, 644 N.E.2d 331 (1994).

{¶24} According to Dunn, Brockler's actions were egregious and thus warranted the most extreme sanction of dismissal of the indictment. Whether the former assistant prosecutor violated any professional standards of conduct is not for this court to decide. The issue before this court is whether the trial court abused its discretion in denying Dunn's Crim.R. 48(B) motion to dismiss. Based on the record, we find that the trial court did not.

{¶25} After it was discovered that Brockler interjected himself as a witness in the case, the prosecutor's office immediately removed him from the case. Additionally, an

independent investigation was conducted regarding whether Brockler's conduct compromised the case and if it was authorized by his supervisors.

{¶26} The trial court conducted a hearing on Dunn's motion to dismiss, reviewed the independent investigation in camera, and determined that the conduct taken by the assistant prosecutor was done at his own direction. The court further found that Brockler's involvement did not influence the alibi witnesses testimony — Mossor testified at the hearing that she was with Dunn at Edgewater Beach at the time of the murder. Lewis did not testify at the hearing, but her statement she gave to police, albeit after the Facebook conversation, denied being with Dunn and Mossor. At no time during the Facebook conversations did Lewis commit to her whereabouts or who she was with on the day of the murder. While it is true that it is unknown what Lewis's testimony would have been at trial but for Brockler's involvement, speculation alone is insufficient grounds to impose the most severe sanction against the State for the actions of one rogue assistant prosecutor. Based on Mossor's testimony at the dismissal hearing, Dunn's alibi was still a viable defense, with the jury being the judge of credibility at trial if Lewis testified contrary to Mossor. The trial court's decision to not punish the entire prosecutor's office based on Brockler's conduct is supported by the case law in Ohio.

{¶27} In *Redi Car Wash*, 51 Ohio App.3d 60, 554 N.E.2d 929, this court examined a situation where the trial court discovered that the prosecutor had filed a libel suit against the defendants that were charged with crimes in his jurisdiction. The defendants had filed grievances against the prosecutor with the local bar association. Further, the

prosecutor had threatened more charges unless the other matters were resolved.   The trial court dismissed the criminal charges because of the prosecutor's "personal vendetta."   *Id.* at 61.   This court reversed the trial court and found no basis that would have warranted dismissal.   *Id.* at 62.   This court found that the "integrity of the proceedings" were protected by the appointment of another prosecutor on the case.   *Id.* at 61-62, citing *Royal Indem. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 34, 501 N.E.2d 617 (1986).

{¶28} In this case, the Cuyahoga County prosecutor's office requested that a special prosecutor be appointed to further handle the case, which the trial court granted. The office also conducted an independent investigation of Brockler's conduct.   These actions preserved the integrity of the proceedings.

{¶29} In *Sutton*, 64 Ohio App.2d 105, 411 N.E.2d 818, the Ninth District reviewed a case where the prosecutor sought to dismiss criminal charges against the defendant in order to file the charges in another county that would be more favorable to his motion for a voice exemplar, which had already been denied by the trial court.   Once the court learned of this, the court dismissed the case with prejudice.   The Ninth District reversed, stating, "[w]e do not commend the prosecutor's actions, but we do not believe those actions merited dismissal of the entire proceedings with prejudice.   Such a severe action is unsatisfactory because it means that a defendant who may be guilty of a serious crime will go free without having been tried."   *Id.* at 108.

{¶30} In this case, we agree with the Ninth District's reasoning and do not condone Brockler's conduct.   However, Dunn has failed to show how his statutory or

constitutional rights were violated by Brockler's conduct. This is not a case where a discovery violation has occurred such that *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), would be implicated and the defendant would not receive a fair trial. Dunn was provided full access to all evidence and discoverable material relative to the actions of Brockler in this case.

{¶31} Furthermore, Brockler's actions were discovered prior to trial, not during trial and after jeopardy attached. The investigation into Brockler's actions were resolved fairly quickly and from the evidentiary hearing on his motion to dismiss, Dunn's alibi arguably remained intact.

{¶32} Accordingly, we cannot say that the trial court's decision denying Dunn's motion to dismiss was unreasonable, arbitrary, or unconscionable. This decision, however, is by no means an endorsement of Brockler's conduct. The first assignment of error is overruled.

## II. Admission of Evidence

{¶33} As part of its case, the state sought to introduce cell phone records to prove that Dunn was in the vicinity of the Red Zone car wash on the day of the murder and not at Edgewater Beach as he and Mossor told police. Specifically, the state wanted to show which cell phone towers Dunn's phone "pinged off" of to prove his location.

{¶34} The defense filed a motion in limine, arguing that expert testimony is required regarding this scientific and technical information and the state failed to follow Crim.R. 16(K) notifying the defense of an expert and providing an expert report.

**{¶35}** The trial court held a hearing and issued a journal entry concluding that the state's witness from Verizon would be "prohibited from offering technical or scientific testimony concerning the functions of cellular phone communications, but may testify as a custodian of records and describe the relevant information and notations contained therein."

**{¶36}** During trial and over a continuing objection, Verizon representative, Jim Svoboda, testified about cellular phone records belonging to two different cellular phone numbers. His testimony established that he did not know who were the subscribers of these numbers, who the numbers actually belonged to, or who was using the telephone numbers. His testimony equated to reading the information on the records aloud to the jury and explaining what each column on the records depicted. Pertaining to which cell tower captured the beginning and end of the call, Svoboda identified the tower by identification number and from which side of the tower the call "pinged." No testimony was given explaining the concept of "pinging" or how cellular phones work.

**{¶37}** Earlier in the trial, criminal intelligence analyst, Lori Braunschweiger, testified over a continuing objection about a map she created based on information she received from a secondary source. She testified that she plotted out cellular towers by using a red pin onto a map. Additionally, she plotted those towers in conjunction with two fixed locations — Edgewater Beach and the Red Zone Car Wash. Braunschweiger stated that she made green circles around the cell towers that were "hit" on the day of the

murder by the target telephone number. She also testified that she indicated on the map the cell tower identification numbers.

**{¶38}** During the state's closing argument, the state emphasized that Dunn's whereabouts on the day of the murder placed him near the car wash rather than Edgewater based on the location of the cell towers where his phone pinged from. As the defense pointed out in its closing, the jury heard no evidence on who was using Dunn's cell phone that day or that any of the cellular records they heard testimony about belonged to Dunn. The defense further emphasized that there was no testimony or evidence regarding what it means when a cell tower handles a call. Additionally, the defense stated to the jury that no evidence was presented to prove that a cell tower that is two miles away from the crime scene that handles a cellular call also proves that the phone that made the call is also two miles away from that tower.

**{¶39}** In his second assignment of error, Dunn contends that the trial court erred and abused its discretion in admitting testimony regarding cellular phone towers. Specifically, Dunn challenges that the state was required to present expert testimony to explain the function of cell phone towers, tracking, and location techniques.

**{¶40}** The admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. *State v. Frazier*, 8th Dist. Cuyahoga No. 97178, 2012-Ohio-1198, ¶ 17. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable, rather than a mere error in judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶41}** In *State v. Perry*, 11th Dist. Lake No. 2011-L-125, 2012-Ohio-4888, the court reviewed the trial court's decision allowing the state's cellular provider witness to testify despite not complying with Crim.R. 16(K) and providing an expert report. The trial court concluded that the witness was an expert because he possessed knowledge outside the realm of a normal juror. *Id*. at ¶ 63. However, the court allowed the witness to testify despite no Crim.R. 16(K) expert report being filed because the witness was merely testifying as to factual matters rather than opinions. *Id*. In upholding the trial court's decision, the *Perry* court concluded that, because the witness did not make any independent findings or form any conclusions or opinions on cell phone triangulation or tracking, an expert report was not required. *Id*. at ¶ 63-65.

**{¶42}** The distinguishing factor in *Perry* from the case before this court is that the *Perry* witness testified about how a cell phone works, how the device utilizes nearby towers for connectivity, and how the service provider records this information. According to the *Perry* court, this information was general background information allowing the witness to interpret the cell phone records. From there, the witness explained the records and compared the locations on the phone records to the corresponding locations on the tower site maps. The *Perry* court found this tactic simple enough that a "layperson" could make this determination. *Id*. at ¶ 65. The court further noted that the defendant did not challenge the testimony by a Verizon Wireless representative who merely testified about the content of the defendant's cellular phone records that she brought with her at trial. *Id*. at ¶ 67.

{¶43} In support of his argument on appeal, Dunn cites to case law from other states — Maryland, Missouri, Texas, and California, for the proposition that expert testimony is required regarding cell phone towers linking and mapping. While this may be true in those jurisdictions, Svoboda was prohibited from and did not testify about cell phone tower linking and mapping. He merely read specific portions of the cellular records to the jury, including which cellular tower the call originated from and ended from. He did not testify about how a cell phone works, how a cell tower would trace a signal, or location techniques. Rather, he factually explained the contents of the complex and detailed phone records. Svoboda's testimony was much like the testimony in *Perry* by the Verizon customer service representative who only testified about the defendant's records, which was not challenged. *See Perry* at ¶ 67.

{¶44} Moreover, Agent Braunschweiger testified about the map she created plotting information she received about the cell tower information appearing on the subpoenaed phone records. Braunschweiger's testimony was much like the witness in *Perry* — a layperson could compare the locations depicted on the records to the corresponding location on the site map. *Perry* at ¶ 65.

{¶45} A review of the record demonstrates that no *witness* testified about Dunn's location at the time of the murder by means of cell phone tower location and mapping. Any inferences or speculation about Dunn's location by use of this cell phone evidence was established by the state during its closing argument. Whether the state commented on evidence outside the record during closing or was merely "connecting the dots" is not

an argument or assignment of error raised before this court. Therefore, we will not address it.

{¶46} Accordingly, based on the assignment of error raised and the arguments contained therein, we cannot say that the trial court abused its discretion in allowing Svoboda and Braunschweiger to testify concerning cell phone records and corresponding cellular tower placement. Dunn's second assignment of error is overruled.

### III. Flight Jury Instruction

{¶47} In his third assignment of error, Dunn contends that the trial court erred in giving the jury a flight instruction.

{¶48} The giving of jury instructions is within the sound discretion of the trial court, and we review it for an abuse of discretion. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, ¶ 35, citing *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3d Dist.1993).

{¶49} In this case, the trial court gave the following instruction to the jury on flight:

> There may be evidence in this case to indicate that the defendant fled from the scene of the crime. Flight does not in and of itself raise the presumption of guilt, but it may show consciousness of guilt or a guilty connection with the crime.
>
> If you find that the defendant did flee from the scene of the crime, you may
>
> consider that circumstance in your consideration of the guilt or innocence of
>
> the defendant.

(Tr. 1631-1632.)

{¶50} Similar versions of this flight instruction have been upheld by this court in numerous cases, including *State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2012-Ohio-2762, ¶ 55, and *State v. Hamilton*, 8th Dist. Cuyahoga No. 86520, 2006-Ohio-1949. However, the instructions given in those cases were upheld because the evidence demonstrated that the instruction was warranted.

{¶51} "'[A] mere departure from the scene of the crime is not to be confused with deliberate flight from the area in which the suspect is normally to be found.'" *State v. Santiago*, 8th Dist. Cuyahoga No. 95516, 2011-Ohio-3058, ¶ 30, quoting *State v. Norwood*, 11th Dist. Lake Nos. 96-L-089 and 96-L-090, 1997 Ohio App. LEXIS 4420 (Sept. 30, 1997).

{¶52} In *Norwood*, the court found that the flight instruction was error, albeit harmless error, because the defendant did not "leave the general area in which he may have normally been found. Additionally, we do not equate appellant's attempt to hide in [a friend's] kitchen with flight." *Id*. at *15. The court further found that "the facts are also insufficient to justify a flight instruction because appellant did not flee to a situs where he could not have been easily located." *Id*. at *15-16. Accordingly, it must be clear that the defendant took affirmative steps to avoid detection and apprehension beyond simply not remaining at the scene of the crime.

{¶53} Recently, this court held in *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 48 and *State v. Johnson*, 8th Dist. Cuyahoga No. 99715,

2014-Ohio-2638, ¶ 110, that the defendant's conduct of leaving the scene of the crime did not warrant a flight instruction because there was no evidence of deliberate flight in the sense of evading police. *See also State v. Wesley*, 8th Dist. Cuyahoga No. 80684, 2002-Ohio-4429 (flight instruction not warranted based on insufficient evidence).

{¶54} Much like in *Jackson* and *Johnson*, the evidence in this case did not warrant a flight instruction. Dunn's leaving the scene was not deliberate flight in the sense of evading police and detection. There was no evidence presented that Dunn fled to a location where he could not be located or that he evaded police once detected. Accordingly, we find the trial court abused its discretion instructing the jury on flight.

{¶55} Despite the court's error, we cannot say, nor has Dunn demonstrated, that the error was prejudicial. "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, ¶ 27, citing *State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 36, citing *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 604 (1992). "A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice." *State v. Hancock*, 12th Dist. Warren No. CA2007-03-042, 2008-Ohio-5419, ¶ 13. Conversely, "[a]ny error, defect,

irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A).

**{¶56}** Reviewing the jury instructions as a whole, we cannot say that the trial court's instruction on flight was prejudicial, such that a manifest miscarriage of justice occurred. The instruction given, although improper, allowed the jury to make its own conclusions on flight and to consider whether Dunn left the scene and, if so, his motivation for leaving. Thus, the instruction did not change the underlying facts of the case; the instruction was harmless beyond a reasonable doubt.

**{¶57}** Accordingly, we overrule Dunn's third assignment of error.

**{¶58}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., P.J., and

PATRICIA ANN BLACKMON, J., CONCUR